## KOON v. MUNRO.

1. The judgment of this court in *Koon* v. *Munro*, 11 *S. C.* 140, stated.
2. The rule there prescribed for ascertaining the amount of confederate money rightfully in the hands of the administrator held him responsible for the collection of *ante bellum* credits from himself and other solvent debtors, not available for the purposes of the administration, and it was error in the Circuit judge to apply to the case any other principle.
3. The amount of such moneys improperly collected, as reported by the referee, is sustained by the evidence, and therefore affirmed.

Before THOMSON, J., Union, December, 1879.

The opinion states the case.

*Messrs. Rion & McKissick*, for distributees.

*Messrs. J. B. Steedman, R. W. Shand*, contra.

January 27th, 1883. The opinion of the court was delivered by MR. JUSTICE McGOWAN. Clinton Wilson died in 1860, and W. J. Keenan administered upon his estate. Keenan died in November, 1867, and William Munro administered upon his estate. In 1869 Henry Koon took out letters of administration *de bonis non* upon the estate of Clinton Wilson, and brought this action against the administrator of W. J. Keenan, for an

account of his administration of the estate of C. Wilson. Most of the assets of the estate of Wilson consisted of *ante bellum* debts due the estate, and among them a large debt of the first administrator, Keenan himself, and the questions in the case arise out of the manner in which he dealt with these assets during confederate times. He collected most of the debts due the estate in confederate money during the war, and among them his own, and on December 31st, 1864, invested $5,800 in confederate bonds, for which, though now worthless, credit is claimed for him.

The case was referred to John L. Young, Esq., as referee, who reported that there was due by the estate of Keenan $8,745.55 in confederate money, and that there was due by the estate $304.61 in United States currency. Both parties excepted, and Judge Northrop held that the investment in confederate bonds was not allowable, and that the balance found by the referee was due in legal currency. The defendant appealed, and this court determined the principle which should govern the accounting, and remanded the case. See 11 *S. C.* 140.

. This court held as follows: "It would follow, if the foregoing deductions are sound, that the test of the right of the administrator to receive in satisfaction of the debts of the estate, a currency in common use, but not having the quality of a legal tender, is the necessity of the administration; one element of this necessity being the existence of debts capable of affecting prejudicially the assets of the estate unless satisfied, and the other would be just ground to apprehend loss of assets by allowing unsecured debts to remain outstanding. * * * It is clear that in either of these cases, as well as when money is needed to defray current or extraordinary expenses of the administration, the administrator would be authorized to receive such currency at the rate at which it passed from hand to hand in the community as money, unless there should be reason to conclude that it could not be advantageously employed at such valuation for the purposes of the administration. * * * It is proper to add that in applying these principles the administrator ought not to be held to strict accountability as an insurer of such reasonably anticipated results, but so long as he brings a fair and honest

judgment, resting on reasonable grounds, to guide his conduct in this respect, he should receive protection. This depends on the principle that one clothed with the exercise of discretion is only responsible for its abuse. * * * As the statement of the accounts was not conformed to the principles that should have been applied to them, the intention of the parties, as may be assumed, not having been directed to such considerations, there should be a new inquiry directed, and confined, as regards the present question, to ascertaining how much, if any, of the account funded in bonds, consisted of confederate currency rightfully in the hands of the administrator as assets of the estate, not available for outlay to meet any other proper exigency of the estate, to the end that the administrator should receive credit for such amount upon the principle above stated," &c.

Accordingly, the case went back to the Circuit Court, and was referred to D. A. Townsend, Esq., as special referee to restate the account of W. J. Keenan, as administrator, in conformity with the principle announced in the judgment of this court, as above stated. He took the testimony and reported that on December 31st, 1864, the administrator, Keenan, had rightfully in his hands, as assets of his intestate's estate, $1,143.80 in confederate money, not needed for the exigencies of the estate, for which the estate of Keenan should have credit on the investment in confederate bonds, or, so to speak, that the investment to that extent should stand as allowed, and that all the remainder of the bonds should be stricken from the account as not allowed. And upon a re-adjustment of the accounts upon this basis he reported due by Keenan, the administrator, on September 27th, 1879, the sum of $9,946.05.

To this report the defendant excepted, and the case came on again for trial before Judge Thomson, who recommitted the report with instructions " to take an account of the sums of money which were due the intestate in his life-time by Keenan individually, or by Keenan with others, and credited by Keenan, as received from himself in his returns; and also to take an account of the moneys received by Keenan, as administrator, from all other sources, from debtors according to his returns. And from these two sums, and from their amounts, ascertain the

proportions of the money charged by Keenan, as received from himself, on one part, and received by Keenan from all other debtors, on the other part, which entered into the confederate bonds, and are credited by Keenan as of date December 31st, 1864."

From this decree both parties appealed to this court. The defendant upon the following grounds: "Because his Honor, for the purpose of ascertaining what proportion of the currency that went into the confederate bonds, purchased for the estate of Clinton Wilson, 'was derived from assets of the estate other than that paid by the administrator himself in discharge of his individual and joint debts,' should have ordered that an account be taken of the amount credited by Keenan in his returns, as received from himself on debts due the intestate by him at the date of his last payment of them, viz., on February 22d, 1863; and that from said amount should be deducted the sum then due to the administrator by the estate, as shown by his returns. And also an account of the moneys received by Keenan, as administrator, from all other sources after the date of his said last payment, according to his returns. And that from these two sums and from their amount, it be ascertained what proportion of the sum that went into said bonds was received from himself, and what proportion was received from other sources."

The plaintiff appealed upon these grounds:

1. "For that his Honor has laid down a different rule for ascertaining the liability of W. J. Keenan, as administrator, from that prescribed by the Supreme Court.

2. "For that his Honor did not confirm the finding of the referee upon the matter of fact submitted to him by the decree of the Supreme Court, to wit: 'That on December 31st, 1864, Keenan, as administrator of C. Wilson's estate, had rightfully in his hands, as assets of said estate, $1,143.80 in confederate currency, not available for the exigencies of said estate, and only this amount.'

3. "For that his Honor did not confirm the finding of the referee, 'that upon a re-adjustment of the administrator's accounts, after applying said credit, he is indebted to the estate of C. Wilson in the sum of $9,946.05, September 27th, 1879.'"

The former judgment of this court declared the principles which should govern the accounting. Until reversed, it is the law of the case. The principle upon which the account should be stated having been determined, the case was remanded simply to apply the principle to the facts which might be made to appear. The only questions which the Circuit Court could consider were, first, what was decided by the Supreme Court; and, second, after applying the facts, how did the account stand.

As to the first question, there does not seem to be any obscurity. The doctrine announced by the former judgment was, that as it is the duty of an administrator to collect the choses of his intestate, and considering the peculiar circumstances of the country at the time—that during the war there was no other circulating medium but confederate money—an administrator would be justified in receiving confederate money in payment of debts due the estate, unless there was reason to believe that such currency could not be used for the purposes of administration or the payment of distributees. As we understand the judgment, the administrator was not to be held liable for taking confederate money for debts contracted before the war, except under the circumstances set forth in the extract of the opinion given above.

It happened that in this case, among the debts received in confederate money, was a large one due the intestate by the administrator himself, and in discussing the principle announced some observations were thrown out, in the opinion of the court, as to the impropriety of the administrator discharging his own debt with confederate money, beyond the probable necessities of the administration, as in that case he would not be acting in the interest of the estate, but in his own. But the judgment does not proceed upon the view that the amount received by the administrator from himself should be the measure of the money wrongfully in his hands. The test was, not what he received from himself, but what he received from solvent debtors, including himself, over and above what might be reasonably considered as available for the exigencies of the estate. If the administrator had reasonable ground to suppose that the whole amount of the debt due by him could have been made available,

then he might rightly receive from himself confederate money, and discharge his own debt.

According to this interpretation of the former judgment, it is manifest that the Circuit judge did not follow the principle laid down, but propounded a new rule of accountability, making the amount received by the administrator on his own debt, and not that received in excess of the amount available for the purposes of the estate, the measure of the amount which was wrongfully in his hands. As we understand the Circuit decree, it raised what was merely a subordinate point into the main question in the case, and as to the means of carrying out this view prescribed an arithmetical rule of proportion. We think this was error, and this disposes of the defendant's exception, which is based upon the new principle propounded by the Circuit judge.

The only other question is whether the account stated by the referee was in accordance with the principle announced in the former judgment. It seems that he gave the administrator credit for all payments, and as to the confederate bonds allowed $1,143.80, upon the ground that to this extent the money which purchased them was rightfully in his possession, and struck the remainder of the bonds from the account. The report is not very full as to the precise manner in which he reached that conclusion, but he seems to have proceeded in accordance with the former judgment.

We have seen that the administrator was allowed to receive confederate money in the collection of bad debts, and from solvent *ante bellum* debtors, including himself, to the extent that he might honestly suppose could be made available for the purposes of administration. Now the investment itself in confederate bonds, without explanation, was substantially an admission that at least that much confederate money had been collected in excess of what was needed, for we are authorized to assume that if it had been needed for the purposes indicated, the administrator would not have invested it in confederate bonds. Did he have reasonable grounds to suppose that such a large sum would be needed for the purposes indicated? The distributees lived out of the State and we hear of no instructions upon their part to collect the money or that they would receive the confederate

money. The administrator must have known the debts of the estate, indeed he seems to have controlled one of the largest, and it does not appear that the necessities of the administration thus known to him, made it probable that the whole of his large debt would be needed.

When he made his second return, March 11th, 1863, covering the transactions of 1862, and up to that date of 1863, it appears that he was in advance for the estate only the sum of $906.97, and does not state that at that time he had received any part of his own large debt. The next return was not made until January 10th, 1866, after the war was over, and confederate money had become worthless. In the latter return (1866) he went back into the time prior to his second return (March, 1863,) and charged himself with having received on February 22d, 1863, his own individual debt and that as partner, amounting to $9,335.69, and this, with other debts received, aggregated a sum so large that after deducting all debts and expenses paid, he still had a large balance on hand, of which, by the same return, he claimed to discharge himself of $5,800.00, as invested in confederate bonds on December 31st, 1864, when they were very nearly worthless.

If the alleged receipt of his own large debt had not been fixed at a date prior to the time when he expended the money in hand from other sources, the matter would have been perfectly plain. There was probably no actual payment to himself of his own debt, which would have been the merest form, but he simply charged himself as having received it on a particular day. When he made his return (1866) nearly three years after, he fixed that date back in February, 1863, which was manifestly theoretical merely. To say nothing as to the seeming conflict in the returns—that of 1866 claiming that the administrator had received the whole of his large debt on February 22d, 1863, while his second return, made after that time (March, 1863,) made no reference to such transaction, it is enough to state that the reasonable probability of his needing such a large sum for the purposes indicated does not appear. If it were necessary to use a part of his debt to re-imburse himself for money paid out for the estate, that necessity ceased as soon as the amount required

was received. By the former judgment it was determined that he could not go beyond that, or, at most, beyond what he might reasonably suppose would meet the exigencies of the estate, but he did go beyond to the extent of the money invested in the confederate bonds.

It seems to be conceded that the administrator collected doubtful debts (which are exceptional) to the amount of $1,328.61, and paid out to Macbeth and Otts $184.00, leaving a balance rightfully in his hands at the close of the year 1863, of $1,143.80, for which the report gives him credit.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the report of D. A. Townsend, referee, be made the judgment of the court.